THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| HYDRO-GEAR, L.P., <br><br> Plaintiff, <br><br> v. <br><br> METAL POWDER PRODUCTS, LLC, <br><br> Defendants. | 1:23-cv-328 |

## COMPLAINT

Plaintiff Hydro-Gear, L.P. ("Hydro-Gear" or "Plaintiff"), sues defendant Metal Powder Products, LLC ("MPP" or "Defendant") and states as follows:

## INTRODUCTION

1.  For decades, Hydro-Gear and MPP have had a productive working relationship whereby Hydro-Gear pays for certain tooling equipment and MPP uses that tooling equipment to manufacture and supply component parts for Hydro-Gear's business operations.

2.  On October 31, 2023, MPP completely obliterated the parties' longstanding relationship by refusing to manufacture and ship parts subject to various Hydro-Gear purchase orders—thereby holding Hydro-Gear's entire business operations hostage—unless Hydro-Gear agrees to enter into a brand new, completely one-sided supplier agreement.

3.  With no choice but to file this lawsuit, Hydro-Gear asserts the following causes of action against MPP in connection with the purchase orders and Hydro-Gear's tooling equipment: replevin/seizure (Count I); breach of contract—supplier manual and related terms and conditions (Count II, in the alternative to Count I); bailment (Count III, in the alternative to Count II); conversion (Count IV); and breach of contract—purchase orders for component parts (Count V).

1

## PARTIES, JURISDICTION AND VENUE

4. Hydro-Gear is a limited partnership organized in Illinois and has its principal place of business in Sullivan, Illinois. Hydro-Gear's limited partners are citizens of Illinois and Denmark. Hydro-Gear is in the business of, *inter alia*, manufacturing and selling hydrostatic pumps, motors and integrated hydrostatic transaxles.

5. Upon information and belief, MPP is a single-member limited liability company organized in Delaware and has its principal place of business in Noblesville, Indiana. Upon further information and belief, MPP's single member is a citizen of the State of Indiana, and MPP is authorized to do business in the Commonwealth of Pennsylvania.

6. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a) because there is complete diversity amongst the parties and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial portion of the events complained of herein took place in this Judicial District and the Commonwealth of Pennsylvania.

## BACKGROUND FACTS

**The Purchase Orders and Tooling Equipment**

8. Hydro-Gear is a manufacturer of certain equipment, including hydrostatic drive systems used in connection with lawn and garden markets. In order to manufacture the equipment used for its business, Hydro-Gear engages certain suppliers, such as MPP, to procure component parts necessary for manufacturing.

9. Upon engaging a supplier, Hydro-Gear provides the supplier with certain tooling equipment to be used exclusively in connection with manufacturing Hydro-Gear's component parts. Such tooling equipment takes months to manufacture and is unique to Hydro-Gear.

Additionally, pursuant to Hydro-Gear's written agreements with its suppliers, the parties agree that the tooling equipment is the sole property of Hydro-Gear.

10. For decades, MPP and Hydro-Gear have been engaged in a contractual relationship whereby MPP agreed to manufacture component parts pursuant to purchase orders made by Hydro-Gear.

11. In an effort to memorialize the parties' longstanding arrangements, and as a condition precedent to Hydro-Gear continuing to issue purchase orders, Hydro-Gear issued certain documents related to its purchase orders and tooling equipment. First, in or around September 2007, MPP executed an acknowledgment whereby they agreed to the terms as outlined in the Hydro-Gear manual ("the Supplier Manual"). Second, in or around September 2012, issued revised terms and conditions concerning its purchase orders (the "Terms and Conditions"). True and correct copies of the Supplier Manual and Terms and Conditions are attached as **Exhibit A** and **Exhibit B**, respectively, and are incorporated by reference.

12. Relying on MPP's agreement to the Supplier Manual and Terms and Conditions, Hydro-Gear continued to issue purchase orders to MPP via its online purchase order portal (collectively, the "Purchase Orders", and together with the Supplier Manual and the Terms and Conditions, the "Contracts") pursuant to which MPP agreed to manufacture component parts for Hydro-Gear.

13. Thereafter, Hydro-Gear continued to issue Purchase Orders through its online portal and in the ordinary course of business. The online portal specifies, among other things, each specific component part, the quantity required, and the dates by which Hydro-Gear required delivery of each part from MPP. Once MPP manufactured the component parts, MPP transports

them to Vendor Managed Inventory ("VMI") warehouses, where Hydro-Gear retrieves the parts and brings them to its facilities for further manufacturing and business operations.

14. For many years, Hydro-Gear and MPP enjoyed this mutually beneficial contractual relationship as a part of their ordinary course of business.

15. Over the course of decades, Hydro-Gear issued purchase orders for, and provided MPP with, certain tooling equipment in MPP's facilities in St. Marys and Falls Creek, Pennsylvania, for MPP to use solely in connection with manufacturing the applicable component parts (collectively, the "Tooling Equipment"). A true and correct copy of a spreadsheet identifying Hydro-Gear's Tooling Equipment in the possession, custody and control of MPP in this District is attached as **Exhibit C** and incorporated by reference.

16. Additionally, from time to time over the course of years, Hydro-Gear and MPP would exchange communications verifying that MPP has possession of certain of Hydro-Gear's Tooling Equipment at MPP's facilities. A true and correct copy of the most recent asset verification email, in August 2023, is attached as **Exhibit D** and incorporated by reference.

17. The Tooling Equipment is specialty-made to create Hydro-Gear component parts only, and MPP has acknowledged that it will store and maintain the Tooling Equipment for Hydro-Gear's exclusive use. Therefore, pursuant to the terms of the Supplier Manual and Terms and Conditions, the Tooling Equipment belongs to Hydro-Gear and is only to be used in connection with the Purchase Orders.

18. Specifically, the Supplier Manual states, in pertinent part: "All tooling (whether purchased, replaced, repaired or maintained by the vendor) shall remain the exclusive property of Hydro-Gear and should be clearly marked as such." *See* Ex. A ¶ 11.

19. Additionally, the Terms and Conditions state, in pertinent part: "**Equipment**: Any equipment (including, without limitation, jigs, dies, tools and patterns) which is made, constructed or acquired for HYDRO-GEAR at HYDRO-GEAR's expense, shall be and remain the property of HYDRO-GEAR, and shall be used exclusively by Seller for the production of products for HYDRO-GEAR." *See* Ex. B ¶ 10.

**MPP's Default Under The Contracts**

20. On or about October 31, 2023, with various Purchase Orders pending fulfillment, MPP took the position with Hydro-Gear that their business relationship was too favorable to Hydro-Gear, and MPP demanded that Hydro-Gear enter into a new supplier agreement (the "MPP Agreement").

21. Although under no duty to do so, Hydro-Gear attempted to negotiate the terms of the MPP Agreement in good faith in an effort to continue their longstanding relationship.

22. Notwithstanding, MPP abruptly ceased work on the Purchase Orders and refused to allow Hydro-Gear to inspect MPP's facilities. Additionally, MPP notified Hydro-Gear that MPP would not fulfill its obligations under the Contracts unless Hydro-Gear agreed to the MPP Agreement in its entirety.

23. As a result, MPP has failed to provide component parts due under the Purchase Agreements since October 2023.

24. MPP defaulted in its obligations to Hydro-Gear under the Contracts by, among other things, failing to fill the Purchase Orders in the applicable timeframe; failing to maintain the component parts at the required inventory levels; and failing to meet the parties' contractual quality standards.

25. As a result of MPP's defaults under the Contracts, Hydro-Gear is unable to manufacture equipment for its third-party customers.

26. Despite Hydro-Gear's repeated demands, MPP has failed, and continues to fail, to comply with the terms of the Contracts.

27. In fact, by failing to fulfil its contractual obligations unless Hydro-Gear agrees to the new MPP Agreement, MPP continues to threaten Hydro-Gear's business operations.

28. On November 17, 2023, Hydro-Gear sent a letter to MPP demanding the immediate return of the Tooling Equipment if MPP refused to recommence manufacture and shipment of Hydro-Gear's component parts to the VMI warehouses. A true and correct copy of Hydro-Gear's November 17, 2023 letter is attached as **Exhibit E** and incorporated by reference.

29. Later that day (November 17, 2023), MPP responded to Hydro-Gear's letter and: (i) confirmed its refusal to recommence manufacture and shipment of Hydro-Gear's component parts to the VMI warehouses; and (ii) denied breaching the Contracts; and (iii) purported to have ownership over Hydro-Gear's tooling equipment. A true and correct copy of MPP's November 17, 2023 letter is attached as **Exhibit F** and incorporated by reference.

30. After unlawfully refusing to recommence manufacture and shipment of Hydro-Gear's component parts to the VMI warehouses, MPP wrongly and without authorization assumed control, dominion and ownership of the Tooling Equipment and failed and refused to return the Tooling Equipment despite Hydro-Gear's demand.

## COUNT I
### Replevin/Seizure

28. Hydro-Gear incorporates and restates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

29. Within the Contracts, Hydro-Gear agreed to provide Tooling Equipment for the manufacture and procurement of component parts in connection with the Purchase Agreements.

30. Pursuant to the terms of the Supplier Manual and Terms and Conditions, Hydro-Gear owns the Tooling Equipment, which was exclusively manufactured to create Hydro-Gear's component parts.

31. Specifically, the Supplier Manual states, in pertinent part: "All tooling (whether purchased, replaced, repaired or maintained by the vendor) shall remain the exclusive property of Hydro-Gear and should be clearly marked as such." *See* Ex. A ¶ 11.

32. Additionally, the Terms and Conditions state, in pertinent part: "**Equipment**: Any equipment (including, without limitation, jigs, dies, tools and patterns) which is made, constructed or acquired for HYDRO-GEAR at HYDRO-GEAR's expense, shall be and remain the property of HYDRO-GEAR, and shall be used exclusively by Seller for the production of products for HYDRO-GEAR." *See* Ex. B ¶ 10.

33. Therefore, Hydro-Gear owns the Tooling Equipment and is entitled to its immediate possession.

34. Although Hydro-Gear has demanded that MPP turn over the Tooling Equipment to Hydro-Gear, MPP continues to wrongfully detain the Tooling Equipment despite these demands.

35. MPP refuses to surrender possession of the Tooling Equipment as retribution because Hydro-Gear has not signed their proposed MPP Agreement.

36. The Tooling Equipment is presently in the possession of MPP and, upon information and belief, is located at MPP's facilities located at **409 Third Street, Falls Creek, PA 15840** and **150 Ford Road, St. Marys, PA 15857**.

37. Upon information and belief, the value of the Tooling Equipment to MPP is nothing because the Tooling Equipment is designed exclusively for the manufacture of Hydro-Gear's component parts. And, the Tooling Equipment will be of nominal value in a forced liquidation, especially since Hydro-Gear has not had the opportunity to inspect the Tooling Equipment.

38. The value of the Tooling Equipment has depreciated with time and use, and the continued use of the Tooling Equipment will cause its value to depreciate at a faster rate than through the mere passage of time. This depreciation threatens to diminish the value of Hydro-Gear's interest in the Tooling Equipment.

39. The Tooling Equipment is by its nature movable and may be easily moved, destroyed and/or damaged, and its component parts may be readily removed or sold.

40. The Tooling Equipment has not been taken for a tax assessment or fine or seized under an execution against the property of Hydro-Gear.

41. By reason of the foregoing, Hydro-Gear has been damaged and is entitled to an Order and judgment of this Court granting it immediate possession of the Tooling Equipment and for an Order that MPP immediately deliver possession of the Tolling Agreement directly to Hydro-Gear.

42. Hydro-Gear further seeks an Order from this Court directing the issuance of an Order of Writ of Replevin/Seizure to enforce its rights under the Contracts and to recover possession of the Tooling Equipment. Hydro-Gear further seeks the inclusion in the Order of a provision authorizing the U.S. Marshal Service to enter MPP's facilities by any means necessary and search for the Tooling Equipment and/or proceeds thereof at any location where the Tooling Equipment may be located within the Commonwealth of Pennsylvania, and deliver same to, and for such other and further relief as the Court deems just and proper.

## COUNT II
### Breach of Contract - Supplier Manual and Terms and Conditions
### (Pled in the Alterative to Count I)

43. Hydro-Gear incorporates and restates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

44. The Contracts are valid and binding contracts between MPP and Hydro-Gear.

45. By entering into the Terms and Conditions and Supplier Manual, MPP agreed to the terms therein. The Terms and Conditions state, among other things, that the Tooling Equipment is the property of Plaintiff.

46. Thus, Hydro-Gear is the owner of the Tooling Equipment that is currently in MPP's possession, custody or control.

47. Moreover, Defendant used the Tooling Equipment for years in furtherance of the Contracts.

48. MPP defaulted in its obligations to Hydro-Gear under the Contracts by, among other things, failing to return the Tooling Equipment upon Hydro-Gear's demand for the same.

49. Hydro-Gear and MPP had an express or implied agreement that MPP would hold the Tooling Equipment in MPP facilities for the purpose of manufacturing Hydro-Gear's component parts exclusively.

50. Specifically, the Supplier Manual states, in pertinent part: "All tooling (whether purchased, replaced, repaired or maintained by the vendor) shall remain the exclusive property of Hydro-Gear and should be clearly marked as such." *See* Ex. A ¶ 11.

51. Additionally, the Terms and Conditions state, in pertinent part: "**Equipment**: Any equipment (including, without limitation, jigs, dies, tools and patterns) which is made, constructed or acquired for HYDRO-GEAR at HYDRO-GEAR's expense, shall be and remain the property of

9

HYDRO-GEAR, and shall be used exclusively by Seller for the production of products for HYDRO-GEAR." *See* Ex. B ¶ 10.

52. Therefore, Hydro-Gear owns the Tooling Equipment and is entitled to its immediate possession.

53. Despite due demand, MPP has not returned the Tooling Equipment to Hydro-Gear and is instead holding it hostage as retribution for Hydro-Gear's refusal to sign the MPP Agreement.

54. As such, MPP is in breach of the Supplier Manual and the corresponding Terms & Conditions.

55. As a direct and proximate cause of MPP's acts and omissions, Hydro-Gear has suffered damages in an amount to be determined at trial.

56. By reason of the foregoing, Hydro-Gear has been damaged and is entitled to an amount to be determined at trial.

**COUNT III**
**Bailment**
**(Pled in the Alterative to Count II)**

57. Hydro-Gear incorporates and restates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

58. In the alternative, Hydro-Gear pleads that, before 2007, Hydro-Gear had delivered its personal property—certain Tooling Equipment—in good condition and for the sole and exclusive use relating to the Purchase Orders for Hydro-Gear's component parts.

59. Hydro-Gear is the owner of the Tooling Equipment that is currently in MPP's possession, custody or control.

60. MPP took temporary custody and control over the Tooling Equipment pursuant to the Purchase Orders regarding the Tooling Equipment, the Supplier Manual and its corresponding Terms and Conditions.

61. Hydro-Gear and MPP had an express or implied agreement that MPP would hold the Tooling Equipment in MPP facilities for the purpose of manufacturing Hydro-Gear's component parts exclusively.

62. Specifically, the Supplier Manual states, in pertinent part: "All tooling (whether purchased, replaced, repaired or maintained by the vendor) shall remain the exclusive property of Hydro-Gear and should be clearly marked as such." *See* Ex. A ¶ 11.

63. Additionally, the Terms and Conditions state, in pertinent part: "**Equipment**: Any equipment (including, without limitation, jigs, dies, tools and patterns) which is made, constructed or acquired for HYDRO-GEAR at HYDRO-GEAR's expense, shall be and remain the property of HYDRO-GEAR, and shall be used exclusively by Seller for the production of products for HYDRO-GEAR." *See* Ex. B ¶ 10.

64. Therefore, Hydro-Gear owns the Tooling Equipment and is entitled to its immediate possession.

65. MPP has defaulted in its obligations to Hydro-Gear under the Contracts by, among other things, refusing to return Hydro-Gear's Tooling Equipment.

66. Despite due demand, MPP has not returned the Tooling Equipment to Hydro-Gear and is instead holding it hostage as retribution for Hydro-Gear's refusal to sign the MPP Agreement.

67. The refusal to redeliver the Tooling Equipment as a direct result of the misconduct of MPP as bailee, and Hydro-Gear's financial and personal interests in the bailment property was in turn impaired by that conduct.

68. As a direct and proximate cause of MPP's acts and omissions, Hydro-Gear has suffered damages in an amount to be determined at trial.

**COUNT IV**
**Conversion**

69. Hydro-Gear incorporates and restates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

70. Hydro-Gear is the owner of the Tooling Equipment that Defendant that is currently in possession of MPP.

71. As the owners of the Tooling Equipment, Hydro-Gear retained an absolute and unconditional right to immediately possess all of the Tooling Equipment after MPP ceased fulfillment of the Purchase Orders.

72. On November 17, 2023, Hydro-Gear sent a letter to MPP demanding the immediate return of the Tooling Equipment if MPP refused to recommence manufacture and shipment of Hydro-Gear's component parts to the VMI warehouses.

73. Later that day (November 17, 2023), MPP responded to Hydro-Gear's letter and: (i) confirmed its refusal to recommence manufacture and shipment of Hydro-Gear's component parts to the VMI warehouses; and (ii) denied breaching the Contracts; and (iii) purported to have ownership over Hydro-Gear's tooling equipment.

74. After unlawfully refusing to recommence manufacture and shipment of Hydro-Gear's component parts to the VMI warehouses, MPP wrongly and without authorization assumed

control, dominion and ownership of the Tooling Equipment and failed and refused to return the Tooling Equipment despite Hydro-Gear's demand.

75. As a direct and proximate cause of MPP's acts and omissions, Hydro-Gear has suffered damages in an amount to be determined at trial.

## COUNT V
### Breach of Contract - Purchase Orders for Component Parts

76. Hydro-Gear incorporates and restates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

77. The Contracts are valid and binding contracts between MPP and Hydro-Gear.

78. By entering into the Supplier Manual and its corresponding Terms & Conditions, MPP agreed to the terms therein. Further, the parties engaged in years of business whereby MPP issued Purchase Orders for component parts through an online supplier's portal.

79. The Purchase Orders were made in the ordinary course of business and Defendant partially performed on the obligations therein.

80. MPP defaulted in its obligations to Hydro-Gear under the Contracts by, among other things, failing to fill the Purchase Orders in the applicable timeframe; failing to maintain the component parts at the required inventory levels; and failing to meet the parties' contractual quality standards.

81. MPP's defaults under the Contracts have not been cured and are continuing as of the date of this Complaint.

82. Despite due demand, MPP has refused and continues to refuse to comply with the terms of the Contracts.

83. Hydro-Gear has performed all of the terms, conditions and covenants required to be performed by Hydro-Gear under the terms of the Contracts.

84. As a direct and proximate cause of MPP's acts and omissions, Hydro-Gear has suffered damages in an amount to be determined at trial.

85. By reason of the foregoing, Hydro-Gear has been damaged and is entitled to an amount to be determined at trial.

WHEREFORE, Hydro-Gear, L.P. prays for the following relief against Metal Powder Products, LLC:

(i) On its first cause of action, (a) an Order and judgment granting Hydro-Gear immediate possession of the Tooling Equipment, (b) an Order and judgment directing that MPP immediately deliver possession of the Tooling Equipment to Hydro-Gear so that the Tooling Equipment may be disposed of under the terms of the Contracts and applicable law and (c) an Order and judgment directing the issuance of a writ of replevin/seizure directing the U.S. Marshal Service and/or any other appropriate legal authority to break open, enter and search for the Tooling Equipment and/or proceeds thereof at any location where the Tooling Equipment may be located within the Commonwealth of Pennsylvania and deliver same to Hydro-Gear;

(ii) On its second, third, fourth and fifth causes of action, judgment against MPP for actual and compensatory damages in the sum to be determined at trial plus all costs and fees incurred and to be incurred by Hydro-Gear in connection with the enforcement of its remedies under the Contracts; and

(iii) For such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

Dated: November 20, 2023      By:     /s/Timothy D. Berkebile
Michael D. Klein, Esquire
Pa. I.D. No. 76212
mklein@mcneeslaw.com
Timothy D. Berkebile, Esquire
Pa I.D. No. 92920
tberkebile@mcneeslaw.com
McNees Wallace & Nurick LLC
One Oxford Centre
301 Grant St., Suite 1100
Pittsburgh, PA  15219
(412) 227-2500 (Phone)
(412) 227-2050 (Facsimile)

Brian W. Ledebuhr
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, Illinois 60601-1003
(312) 609-7500
bledebuhr@vedderprice.com
(*Pro Hac* Application Pending)

Jean A. Occhiogrosso
Vedder Price P.C.
1633 Broadway, Floor 31
(212)407-7794
New York, New York 10028
jocchiogrosso@vedderprice.com
(*Pro Hac* Application Pending)

*Counsel for Hydro-Gear, L.P.*

15

VP/#63550191